UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. WILLIAMS, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00966-SRC |
| | ) |
| LG CHEM, LTD. | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Robert Williams sued two LG companies after an electronic cigarette powered by an LG 18650 lithium-ion battery exploded in his pocket and severely injured him. Doc. 1 at pp. 2, 12. The Court previously dismissed LG Chem America because Williams failed to make a prima facie case that personal jurisdiction over LG Chem America existed. Doc. 20. Now LG Chem, Ltd. moves to dismiss the case for lack of personal jurisdiction, asserting by declaration that in the three years before Williams's accident, the company had not sold any 18650 lithium-ion batteries to anyone in Missouri, Doc. 30-1 at p. 3, and that the company "never distributed, marketed, advertised, or sold 18650 lithium ion cells directly to consumers as standalone, replaceable batteries," and never authorized anyone else to do so, Doc. 23-4 at pp. 4–5. Nevertheless, because Williams makes a prima facie case that personal jurisdiction over LG Chem exists, the Court denies LG Chem's motion to dismiss.

After the parties fully briefed the motion to dismiss, Williams moved to strike the declaration LG Chem submitted with its reply, arguing that it contained new evidence that LG should have submitted earlier. As explained below, while the Court considers LG Chem's behavior vexing, the Court nevertheless considers the company's declaration because the

company-representative's statements do not change the Court's decision to deny the motion to dismiss.

I.      **Background**

As discussed in the Court's prior order, in the summer of 2018, several weeks after Williams purchased LG 18650 lithium-ion batteries and an electronic cigarette from a retail store in Missouri, two of those batteries exploded in his pocket, causing severe burn injuries to his leg, genitals, and fingers. Doc. 1 at p. 12. Seeking compensation for his injuries, Williams sued LG Chem, Ltd., a Korean company, and one of its American subsidiaries, LG Chem America, Inc, a Delaware company with its principal place of business in Georgia. LG Chem argues that neither the Missouri long-arm statute nor the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution permits the Court to exercise personal jurisdiction over it. Docs. 23-1.

Williams alleges that LG Chem "ship[s] huge quantities of its batteries, including 18650 lithium-ion batteries into Missouri, and that the company "market[s], advertise[s], target[s], and promote[s] the sale of its various products, including lithium-ion batteries, to numerous consumers and distributors throughout Missouri." Doc. 1 at pp. 7–9. Williams claims that LG Chem "has specifically shipped tens of thousands of lithium-ion batteries into Missouri." *Id.* at p. 3. Williams also alleges that LG Chem sells its lithium-ion batteries to third-party distributors with the knowledge and expectation that those batteries will be sold in Missouri. *Id.* As with his response to LG Chem America's motion, Williams does not file any declarations or any other evidence but instead relies entirely on the allegations in his complaint to establish a prima facie case that personal jurisdiction over LG Chem exists.

In support of its motion to dismiss, LG Chem filed two declarations, both by Hwi Jae Lee, who worked as a sales professional for LG Chem from 2015 to 2020. Docs. 23-4, 30-1.

Lee swears that "LG Chem did not sell or ship any 18650 lithium ion cells to anyone located in Missouri in the three years preceding the date of Plaintiff's alleged incident (August 7, 2018)." Doc. 30-1 at p. 3. Lee is "not aware of any basis for the assertion that LG Chem sold or shipped tens of thousands of 18650 lithium ion cells to buyers in Missouri." *Id.* He further attests that LG Chem "never advertised, distributed, or sold any lithium ion battery cells to any distributor, wholesaler, retailer, or other individual or entity known to LG Chem to be engaged in the business of selling 18650 lithium ion cells directly to consumers for use as standalone, replaceable batteries." Doc. 23-4 at p. 5. Lee also states that LG Chem did not design or manufacture 18650 lithium-ion cells in Missouri and the company "is not registered to do business in Missouri, does not have an office in Missouri, and does not own or lease any property in Missouri." Doc. 23-4 at pp. 3, 5.

**II.      Standard**

Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss a lawsuit for lack of personal jurisdiction. When a defendant contests personal jurisdiction, a plaintiff bears the burden at the pleading stage to "make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and alterations omitted). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *K-V Pharm Co.*, 648 F.3d at 592 (internal quotations, alterations, and citations omitted). At this stage, the Court views all the evidence in the light most favorable to the plaintiff and will not dismiss the case if the evidence, when viewed in this light, "is sufficient

3

to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citing *Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309–10 (8th Cir. 1992) and Fed. R. Civ. P. 56(a)).

### III.  Discussion

"Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment," *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011), and LG Chem argues that neither permits the Court's exercise of jurisdiction here.  The Court first considers the due-process issue and then Missouri's long-arm statute, before taking up Williams's motion to strike.

#### A.  Due process

Due process requires a plaintiff to establish that "sufficient 'minimum contacts' exist" between the defendant and the forum state such that "'traditional notions of fair play and substantial justice' are not offended."  *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  These minimum contacts with the forum state must allow the defendant to "reasonably anticipate being haled into court there."  *Id.* (quotation omitted).  While the Due Process Clause allows the court to exercise general or specific personal jurisdiction over a defendant, *see, e.g.*, *Fastpath, Inc. v. Arbela Tech., Corp.*, 760 F.3d 816, 820 (8th Cir. 2014), because Williams argues only that the Court has specific jurisdiction over LG Chem, Doc. 27 at p. 4, the Court only addresses specific jurisdiction.

4

A court's jurisdiction over specific claims arises out of a relationship among the defendant, the forum, and the litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014). For specific jurisdiction to exist, the suit must "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (alterations in original) (citations and internal quotations omitted); *see also Whaley*, 946 F.3d at 451 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)) (noting that "the relationship must arise out of contacts that the 'defendant himself' create[d] with the forum State").

The Eighth Circuit has identified five factors for courts to consider in assessing minimum contacts: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm. Co.*, 648 F.3d at 592 (alteration in original) (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)). The factors are interrelated, and the Eighth Circuit considers them together. *See id.* ("Although the first three factors are primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists.").

### 1. The nature, quality, and quantity of LG Chem's Missouri contacts

Turning to the first and second factors, Williams alleges that LG Chem has pervasive business contacts with Missouri. The complaint alleges that the company regularly "ship[s] huge quantities of its batteries, including 18650 lithium-ion batteries, into and throughout Missouri," and that the company "market[s], advertise[s], target[s], and promote[s] the sale of its various products, including lithium-ion batteries, to numerous consumers and distributors throughout Missouri." Doc. 1 at ¶¶ 10, 30.

5

LG Chem attempts to controvert these assertions with Lee's statement that LG Chem "did not sell or ship any 18650 lithium ion cells to anyone located in Missouri in the three years preceding the date of Plaintiff's alleged incident," Doc. 30-1 at p. 3, but this statement only targets a limited time period and does not contradict Williams's assertions. Moreover, Lee's personal lack of "aware[ness] of any basis for the assertion that LG Chem sold or shipped tens of thousands of 18650 lithium ion cells to buyers in Missouri," *id.*, similarly does not work a denial.

LG Chem also attempts to controvert Williams's claim that it "market[s], advertise[s], target[s], and promote[s] the sale of its various products" in Missouri. Doc. 30 at p. 13. But LG Chem's representative only swears—with surgical precision—that LG Chem did not advertise 18650 lithium-ion batteries for particular purposes and to certain people and entities. Doc. 23-4 at ¶¶ 14, 15, 19 (For example, "LG Chem never distributed, marketed, advertised, or sold 18650 lithium ion cells *directly* to *consumers* as *standalone, replaceable batteries* . . . ."). LG Chem's carefully crafted declaration also does not refute the assertion that LG Chem advertised its products in Missouri. *Id.*

Viewing the evidence in the light most favorable to Williams, Williams plausibly alleges that LG Chem advertised its products in Missouri and shipped "huge quantities" of 18650 lithium-ion batteries into Missouri. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1022 (2021) (When a company "serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit.").

   **2.    The relation of Williams's claims to LG Chem's Missouri contacts**

The third factor requires the Court to consider the relation of Williams's claim to LG Chem's contacts in Missouri. Under this factor, the Court can only exercise specific personal

6

jurisdiction over a defendant where the claims against that defendant arise out of or relate to the defendant's contacts with the forum. *Ford*, 141 S. Ct. at 1025 ("The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum."). LG Chem believes Williams fails to satisfy this critical factor for three reasons: first, the Missouri Supreme Court has found that Missouri courts lack jurisdiction over LG Chem, Doc. 23-1 at p. 11–12; second, LG Chem's admitted contacts with Missouri do not "relate" to Williams's claims because LG Chem "never served a consumer market in Missouri for standalone 18650 lithium ion batteries," and instead only sold batteries to "industrial customers in Missouri, to be encased in battery packs with protective circuit[r]y," *id.* at p. 13; and third, all the purported contacts between LG Chem and Missouri "were formed entirely by the Plaintiff and other third parties," *id.* at p. 15.

LG Chem first argues that the Court should follow the holding in *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899 (Mo. 2020), which LG Chem characterizes as a finding that "LG Chem lacks sufficient minimum contacts with Missouri to satisfy due process in a case involving materially indistinguishable claims." Doc. 23-1 at p. 2. But the *McLaughlin* court premised its due-process ruling on the fact that the plaintiff "did not allege LG Chem sold its batteries directly into Missouri," and went on to hold that "[b]ecause the sale of LG Chem's batteries into Missouri by an independent third party is the only contact between LG Chem and Missouri that [plaintiff] alleges, [plaintiff] has failed to establish LG Chem has sufficient minimum contacts with Missouri." *McLaughlin*, 599 S.W.3d at 904. Unlike the plaintiff in *McLaughlin*, Williams alleges that LG Chem shipped "huge quantities" of 18650 lithium-ion batteries into Missouri, Doc. 1 at p. 3, and LG Chem only attempts to refute this with Lee's

7

carefully crafted statements noted above. Williams's uncontroverted allegation that LG Chem itself directed 18650 lithium-ion batteries into Missouri distinguishes *McLaughlin*.

Next, LG Chem argues that Williams's claims do not arise out of or relate to LG Chem's contacts with Missouri because "LG Chem never served a consumer market for standalone, 18650 vaping batteries in Missouri," and instead only sold batteries to "industrial customers in Missouri, to be encased in battery packs with protective circuit[r]y." Doc. 23-1 at pp. 9, 13 (citing Doc. 23-4 at ¶¶ 15, 17–20). But the only evidence LG Chem relies on for these assertions, Lee's declaration, does not establish that LG Chem "never serviced a consumer market." Lee painstakingly swore only that "LG Chem never distributed, marketed advertised, or sold 18650 lithium ion cells *directly* to consumers as standalone, replaceable batteries, and never *authorized* any . . . entity to do so." Doc. 23-4 at ¶ 15 (emphasis added). Lee further swore that "LG Chem never . . . sold any lithium ion battery cells to any . . . entity known to LG Chem to be engaged in the business of selling 18650 lithium ion cells *directly* to consumers for use as standalone, replaceable batteries," *id.* at ¶ 19 (emphasis added), and had no "distributors for its 18650 lithium ion battery cells located in Missouri," *id.* at ¶ 18. Despite these precisely worded statements, Lee can only swear that "LG Chem did not sell or ship any 18650 lithium ion cells to anyone located in Missouri in the three years preceding the date of Plaintiff's alleged incident." Doc. 30-1 at ¶ 10.

These statements at most establish that LG Chem did not sell 18650 lithium-ion batteries *directly* to consumers, knowingly sell 18650 lithium-ion batteries to an entity that sold *directly* to consumers, or *explicitly authorize* an entity to sell 18650 lithium-ion batteries *directly* to consumers. The declarations do not rule out LG Chem's service of a consumer market through a slightly more complex, hypothetical supply-chain: for example, LG Chem sells 18650 lithium-

8

ion batteries to a Missouri firm, that sells batteries to another firm, that sells batteries directly to consumers. Thus, LG Chem's declarations do not establish that "LG Chem never served a consumer market for standalone, 18650 vaping batteries in Missouri," Doc. 23-1 at p. 9, and do not refute Williams's allegations. The Court therefore need not address LG Chem's legal arguments that depend upon this assertion.

Lastly, LG Chem says "any connections between this lawsuit and Missouri were formed entirely by the Plaintiff and other third parties; none by LG Chem. Therefore, due process is not satisfied." Doc. 23-1 at p. 15. Weighing Williams's allegations against the evidence submitted by LG Chem, the Court disagrees. While personal jurisdiction cannot arise from the unilateral actions of third parties that send a product into a state, *see Bristol-Myers*, 137 S. Ct. at 1781 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."), Williams alleges direct contacts between LG Chem and Missouri, including that LG Chem itself shipped "huge quantities" of 18650 lithium-ion batteries directly into Missouri. Thus, Williams's prima facie case does not rely on LG Chem's "relationship with . . . third part[ies]." *Id.*

The Court finds a close relation between Williams's claims and LG Chem's Missouri contacts. While "[n]one of [the Supreme Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do," *Ford Motor Co.*, 141 S. Ct. at 1026, "there must be an affiliation between the forum and the underlying controversy," *id.* at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780)). Here, a Missourian filed a lawsuit in Missouri, alleging that LG Chem shipped defective batteries into Missouri and that some of those batteries exploded and injured him in Missouri. "So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential

9

foundation' of specific jurisdiction." *Id.* at 1028 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

### 3. Missouri's interest and the convenience of the parties

The fourth factor requires the Court to consider the interest of Missouri in providing a forum to its residents. Here, Williams—a Missouri resident—purchased the batteries in Missouri and suffered injuries in Missouri when the batteries exploded. Doc. 1 at ¶ 1. The fifth factor requires the Court to consider the convenience or inconvenience to the parties. Williams lives in the forum; moreover, Williams's injuries, and the treatment he received for them, happened in the forum. *Id.* at ¶¶ 1, 45. Thus, witnesses also likely live in or near the forum. Moreover, Williams would suffer serious inconvenience should Missouri courts lack jurisdiction over his claims, as South Korea likely serves as Williams's alternative forum for suing LG Chem. On the other hand, LG Chem is a South Korean company with its principal place of business in South Korea. Doc. 23 at ¶ 2. And while consideration of this factor should not "[m]erely shift[ ] the inconvenience from one side to the other," *Terra Intern., Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 696–97 (8th Cir. 1997) (so noting in the context of a 28 U.S.C. § 1404(a) motion to transfer), as a "large corporation," LG Chem is likely "ab[le] to protect its interests in this forum." *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1401–02 (D. Minn. 1991) (finding that "the convenience of the parties" weighed in favor of the plaintiff on a 28 U.S.C. § 1404(a) motion to transfer).

Looking at "all the factors" and considering "the totality of the circumstances," the Court concludes that Williams has made a prima-facie showing that LG Chem purposefully availed itself of the privilege of doing business in Missouri by shipping its 18650 lithium-ion batteries into the state, that Williams's claims relate to those contacts, and that the Court's exercise of

personal jurisdiction over LG Chem comports with due process. *Johnson*, 614 F.3d at 794. Of course, Williams continues to "bear[ ] the burden of proof on the issue of personal jurisdiction, and must establish jurisdiction by a preponderance of the evidence at trial . . . ." *Creative Calling Solutions, Inc.*, 799 F.3d at 979 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

### B. Missouri's long-arm statute

The Missouri long-arm statute permits a court to assert personal jurisdiction based on a number of acts, including: "(3) the commission of a tortious act within this state." Mo. Rev. Stat. § 506.500.1. "While the long-arm statute extends jurisdiction to the limits of the Due Process Clause, it does so only for acts within its enumerated categories." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012).

The Court finds that Williams makes a prima facie case satisfying at least the third category of the Missouri long-arm statute—"the commission of a tortious act within this state." Mo. Rev. Stat. § 506.500.1. Williams asserts several tort claims against LG Chem, and, in Missouri, even "'extraterritorial acts that produce consequences in the state,'. . . are subsumed under the tortious act section of the long-arm statute." *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 232 (Mo. 2010) (quoting *Longshore v. Norville*, 93 S.W.3d 746, 752 (Mo. Ct. App. 2002)). With his allegations of injury, Williams makes a prima facie case that LG Chem's alleged acts produced consequences in Missouri. *See* Doc. 1 at ¶ 1 ("Williams . . . suffered injury in Missouri when that battery exploded while inside of his pocket.")

### C. Williams's motion to strike

Arguing that LG Chem "waited until its reply brief to attach a 'supplemental' declaration that purports to deny a particular allegation in the complaint," Williams moves to strike the

11

declaration.  Doc. 31 at p. 1.  Alternatively, Williams requests that the Court refuse to consider the declaration in deciding the motion to dismiss, or, failing that, permit Williams to depose Lee and conduct other jurisdictional discovery.  *Id.* at p. 3.

As LG Chem points out, while the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), declarations are not pleadings, Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed:  (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.").  Thus, Williams's motion to strike lacks a legal basis and the Court denies it.  *See, e.g.*, *Carlson Marketing Grp., Inc. v. Royal Indemnity Co.*, No. 4-cv-3368, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006) (denying motion to strike because "neither a memorandum nor an affidavit is a 'pleading'").

Alternatively, Williams asks the Court to simply disregard LG Chem's reply declaration.  Indeed, "[c]ourts generally do not review arguments first raised in a reply brief because the other party has not had adequate opportunity to respond to such arguments." *Bayes v. Biomet, Inc.*, No. 4:13-cv-800, 2021 WL 3330911, at *8 (E.D. Mo. Aug. 2, 2021) (citing *Fish v. United States*, 748 F. App'x 91, 92 (8th Cir. 2019)).  By waiting to controvert Williams's allegations that LG Chem shipped 18650 lithium-ion batteries into Missouri, LG Chem smuggled important evidence and argument into the record on reply without adequate justification.

Williams alleged in his complaint that LG Chem "shipp[ed] huge quantities of its batteries, including 18650 lithium-ion batteries, into and throughout Missouri, and each Defendant has specifically shipped tens of thousands of lithium-ion batteries into Missouri."  Doc. 1 at ¶ 10.  Focusing on the last clause in the preceding sentence, LG Chem argues that these

12

statements did not specifically allege that LG Chem shipped tens of thousands of *18650* lithium-ion batteries into Missouri.  Instead, LG Chem says, that specific allegation appears for the first time in Williams's response to LG Chem's motion to dismiss.  Doc. 33 at p. 2; *see* Doc. 27 at pp. 1, 9 (Williams's response, characterizing his complaint as alleging that "LG shipped thousands of 18650 lithium-ion batteries to Missouri").  Thus, LG Chem says it justifiably responded to the specific allegation on reply.

LG Chem's argument lacks merit.  Williams alleges in his complaint that LG Chem "shipp[ed] huge quantities of its batteries, including 18650 lithium-ion batteries, into and throughout Missouri."  In its memorandum in support of its motion to dismiss, LG Chem acknowledged this allegation, Doc. 23-1 at pp. 3–4, and proceeded to make arguments that assumed its truth, *id.* at p. 13 ("Even if LG Chem had shipped 'tens of thousands' of 18650 lithium ion battery cells to industrial customers in Missouri . . .").  Thus, LG Chem cannot feign surprise when Williams pointed out that it failed to controvert the allegation by declaration or otherwise.

The Court discourages LG Chem's legerdemain.  However, as discussed, Williams makes a prima facie case of jurisdiction even considering the second declaration, and the Court denies Williams's motion to strike.

**IV.     Conclusion**

The Court denies LG Chem's [23] motion to dismiss for lack of jurisdiction and denies Williams's [31] motion to strike.

So Ordered this 24th day of March 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE